**STATE of Missouri, Respondent,**

v.

**Daryl K. CLAY, Appellant.**

### No. WD 56215.

Missouri Court of Appeals, Western District.

Submitted July 21, 1999.

Decided Nov. 30, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2000.

Application for Transfer Denied March 21, 2000.

Kent E. Denzel, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

Before ALBERT A. RIEDERER, Presiding Judge, JAMES M. SMART, Jr., Judge and JOSEPH M. ELLIS, Judge.

JAMES M. SMART, Jr., Judge.

Clay was tried *in absentia*, without counsel, and a jury convicted him of one count of possession of methamphetamine in violation of § 195.202, RSMo 1994.[1] Clay appeals his conviction, claiming that the trial court plainly erred and abused its discretion in compelling him to proceed to trial in violation of his rights to due process and assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.

1. All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

## Factual Background

On March 23, 1998, Clay was charged, as a prior and persistent offender, with one count of possession of methamphetamine in violation of § 195.202. On April 20, 1998, Clay appeared before the trial court with his appointed attorney, Jeffrey Martin, and announced that, although indigent, he did not want to proceed with Mr. Martin as his attorney. The court appointed Sanjay Agrawal to represent Mr. Clay.

On June 29, 1998, the case went to trial. Before trial, in chambers, Clay announced that he did not want Agrawal to represent him. The trial judge asked Clay if he understood that he was being charged with possession of methamphetamine, that he was being charged as a prior and persistent offender and the range of punishment for a class C felony. Clay indicated that he understood. Attorney Agrawal announced that he was "completely prepared" for trial. However, Clay did not want Agrawal to represent him. The following discussion took place:

THE COURT: And a jury is here. Now, have you—why don't you want Mr. Agrawal to represent you in this case?

DARYL CLAY: Because he didn't do like he said he was going to.

THE COURT: Which is what?

DARYL CLAY: This should be entered into my file. This is medical records, my medical records, stating that I cannot eat. I cannot. I do not do Methamphetamine.

Attorney Agrawal explained that Clay had only spoken to him on one occasion and at that time determined that Clay's records were not relevant:

And that he had had surgery in March of 1996 and Mr. Clay informed me that, that those medical records would indicate why he cannot eat, and as a defense of why he has to smoke marijuana.[2]

Mr. Agrawal stated that Clay refused to talk to him and had also refused to talk to Agrawal's investigator, Dan Dickey. Agrawal stated that he was not refusing to offer the records Clay wanted offered, even if the relevance was remote. Agrawal indicated that Clay was also upset that his prior attorney had not filed for a change of judge and a change of venue. Agrawal had filed these motions, after informing Clay that they would probably be denied. As it turned out, they were denied.

The court then advised Clay:

THE COURT: It is your choice, sir. It is not, it is not my choice. It is not Mr. Agrawal's choice. It is not anybody's choice but yours, whether you are represented by Mr. Agrawal, at this trial or not.

At the end of today, you might be facing twenty years in the state penitentiary. Do you understand that?

DARYL CLAY: Yes, sir.

THE COURT: Do you understand that I think that is serious? Do you think that is serious?

DARYL CLAY: Yes, sir, I do.

THE COURT: Are you familiar with criminal procedure, at a jury trial?

DARYL CLAY: No, I am not.

THE COURT: Okay, I don't, I don't think it would be wise for you to represent yourself in this case because of the rules of evidence, because of the rules of criminal procedure, you know. I think you would be doing yourself a total disservice.

Do you understand that? Do you understand what I just said?

DARYL CLAY: No, I don't.

THE COURT: Okay, what don't you understand about it?

DARYL CLAY: Well, I, I ain't going to take him for a lawyer. I guess, if

2. Clay was charged only with possession of methamphetamine. However, there was evidence that at the time of his arrest he was also in possession of marijuana.

that is the way it is going to be, I guess I will just represent myself.

\* \* \*

THE COURT: I don't think it would be wise. Have you ever represented yourself at a criminal trial?

DARYL CLAY: No.

THE COURT: All right, have you had any legal training?

DARYL CLAY: No.

THE COURT: All right, you understand me saying to you, I think it is totally not wise for you to proceed without Mr. Agrawal here today. Do you understand that? I think it is foolish on your part.

DARYL CLAY: I—

THE COURT: Are you ready to get up and question these prospective jurors out here about their qualifications to sit on this jury?

That's called voir dire examination of the jury. Are you ready to do that?

DARYL CLAY: No.

THE COURT: Are you?

DARYL CLAY: No.

THE COURT: Are you ready to do that, Mr. Agrawal, on his behalf?

DARYL CLAY: No, he ain't.

THE COURT: Okay, are you ready to make an opening statement, in this case, or make a decision, as to whether you want to make an opening statement, in this case, when it comes your turn?

DARYL CLAY: No.

THE COURT: All right, are you ready to cross examine the witnesses the State may call against you?

DARYL CLAY: No.

\* \* \*

THE COURT: Have you got witnesses here, that you want to testify?

DARYL CLAY: No.

THE COURT: Okay, you have the right to testify, in this case, if you want to. Or, if you don't want to testify, nobody can make you get on the witness stand and testify.

Have you made a decision yet, as to whether you want to testify, in this case?

DARYL CLAY: No.

THE COURT: Do you have any written jury instructions to submit to the jury, in this case?

DARYL CLAY: No.

THE COURT: Have you ever seen the books that contain jury instructions?

DARYL CLAY: No.

\* \* \*

THE COURT: Have you understood the questions that I have asked you this morning?

DARYL CLAY: Not all of them, no.

THE COURT: All right, is there anything that you would like me to explain to you?

DARYL CLAY: Not really.

THE COURT: Again, I think it is extremely unwise that you represent yourself in this case. Do you understand that, what I have said?

DARYL CLAY: What?

THE COURT: Do you understand that I think it is extremely unwise for you to represent yourself in this case, be your own lawyer in this case? Do you understand that?

DARYL CLAY: Yeah.

THE COURT: I don't think that you can do any of the things that are necessary to protect yourself or properly defend yourself at a trial. Do you understand that?

DARYL CLAY: Yes, sir.

THE COURT: All right.

DARYL CLAY: I don't feel that he can represent me properly either though.

Clay claimed that Agrawal did not want to call the witnesses that he wanted called to testify. Agrawal responded that there was one witness, Donna Rogers, that he recommended against calling because it

would not have been good trial strategy to call her to the stand. Agrawal also stated that when he sent his investigator to talk to Clay about building the defense, Clay refused to talk to the investigator. Agrawal said he was still happy to talk with Mr. Clay about the issues and was still happy to go forward with the case. When the court suggested that Clay agree to talk to Agrawal about it, Clay said he was not going to talk to Agrawal anymore. The court then asked:

THE COURT: Okay, is it particularly against him or just anybody that would be representing you?

DARYL CLAY: It is against him, because he said he would be here to admit this file in court that day that we went to court, the last time, the 15th, and he wasn't here. He sent somebody else and I had never talked to her, never seen her before.

THE COURT: That file would have had nothing to do with what went on June the 15th, about a change of judge, a change of venue, or a continuance in this case. Would it?

With that, what you have there, would have had nothing to do with it. So, you might as well get over being unhappy about that file that you have just shown me, coming in to the matter on June the 15th, on the three motions that were heard that day.

If you are unhappy with Mr. Agrawal about that, then I suggest that you go with him into another room here and discuss this with him. That isn't anything to be unhappy with Mr. Agrawal about.

Now, would you like to take the opportunity to talk with him about your witnesses?

DARYL CLAY: I told you, I am not talking to him no more.

THE COURT: Okay and then, you are going to represent yourself in this case. Is that correct?

DARYL CLAY: I guess so, if that is the way it is going to be.

THE COURT: Do you want Mr. Agrawal to stay around, to give you any legal advice about criminal procedure, about jury trial procedure or anything else?

DARYL CLAY: No.

Clay told the court that he could not read. He also wanted three witnesses subpoenaed. The judge then stated:

THE COURT: All right, well, Mr. Agrawal, I am going to ask you to stick around for a few minutes.

We are going to go ahead with this trial in this case and we are going to proceed in this fashion.

Mr. Clay, I think it is a poor judgment on your part, to represent yourself in this case, but I see that that is a decision that you have made.

I see that it is freely made. I see that it is voluntarily made.

I do not agree with it, but then you are right. This is your life and you are going to do what you want to do.

\* \* \*

The judge then gave Clay one more chance to accept the services of Mr. Agrawal, or to consult with him about jury instructions, opening statement, and other aspects of the case. Clay declined. The case then proceeded to jury selection.

After voir dire, Clay asked the court for time to hire an attorney:

DARYL CLAY: Your Honor, can I get enough time to get me a lawyer on my own, without the Court appointing me one?

THE COURT: What period of time are you requesting to do that?

DARYL CLAY: Thirty to sixty days, something like that.

THE COURT: All right, you had the public defender because you did not have the money or the property with which to hire a lawyer. Correct?

DARYL CLAY: That's right.

THE COURT: Where are you going to now get the money or the property to hire a lawyer?

DARYL CLAY: I will just have to go find a job or something, pay it. I don't know.

THE COURT: What is your source of income?

DARYL CLAY: I am not, it states right there, I am not able to work.

THE COURT: Well, does anybody send you a check, social security, general relief?

DARYL CLAY: No, nothing, that is what I am trying to get now.

THE COURT: You got no money coming in?

DARYL CLAY: No money at t'all.

The court asked Clay if he had any assets. He said his only asset was a 1966 Plymouth. He estimated the value of the car was about 100 dollars.

THE COURT: Mr. Clay, if there was any reasonable prospect that you could get a lawyer to represent you, hire a lawyer to represent you, within the next sixty days, I would grant the continuance, but I, I don't, I see zero prospect for you being able to hire a lawyer to represent you.

DARYL CLAY: Well, I was going to talk to Roger Irvin, see if I could get him to do it.

THE COURT: Okay.

DARYL CLAY: I just don't want to go through this without a lawyer, but I just ain't going to take somebody that ain't going to do nothing.

THE COURT: All right. Well, we will go off the record. I will see if Mr. Irvin is available to talk with you.

The judge then attempted to call Mr. Irvin, and determined Mr. Irvin was in another county trying a case. The court denied Clay's request for continuance.

The court noted on its docket sheet:

Defendant is questioned by the Court as to his desire to represent himself in this case. The court finds that desire to be adamant on his part; that it is knowingly and voluntarily made; and intelligently made in the sense that Defendant is aware of the adverse consequences that arise from his not knowing criminal or criminal trial procedure. Moreover, the trial court finds that defendant has "discharged" two appointed public defenders; that Defendant has never been diagnosed with a mental disease or defect.... [H]e discharged his first Public Defender on the day of his first scheduled trial. He has incredulous reasons for discharging Agrawal this date and not cooperating in preparing a defense to this case and that general attitude concerning all scheduled trial dates lead this Court to the inescapable conclusion that he intends to thwart a trial in this case by any means and that all of these actions constitute an intentional waiver of right to counsel on his part.

### Waiver of Counsel

■ Clay maintains that the trial court plainly erred and abused its discretion in compelling Clay to proceed to trial without counsel in violation of his rights to due process and assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. Clay claims that he did not knowingly, voluntarily and intelligently waive his right to counsel because he maintained to the court that he wanted to be represented by counsel, just not Mr. Agrawal. Clay claims that the court did not advise him of the perils and risks of self-representation and that he clearly did not understand the court's comments about the wisdom of self-representation. Further, Clay argues that the court failed to comply with the mandatory requirements of § 600.051, because it did not obtain a written waiver of counsel from Clay.

■ The state concedes error in this case, agreeing with Clay that the trial

court plainly erred by failing to prepare and place a written waiver of counsel into the record. However, the state's confession of error does not bind this court. *State v. Kaner,* 338 Mo. 972, 93 S.W.2d 671, 674 (1936). Accordingly, we will undertake to examine and evaluate Clay's contention that his rights were violated.

■ Clay decided to absent himself from his trial after he made the choice not to keep Agrawal as his attorney. Clay's absence during trial constitutes a waiver of his right to be present during trial. *State v. Drope,* 462 S.W.2d 677 (Mo.1971). However, we are presented with no authority suggesting he cannot complain about what happened before he departed.[3] Accordingly, we will examine Clay's complaints on appeal. The Sixth[4] and Fourteenth Amendments to the United States Constitution guarantee the right to assistance of counsel before any sentence of imprisonment can be imposed. *State v. Wilkerson,* 948 S.W.2d 440, 443 (Mo.App.1997). In 1963, the United States Supreme Court ruled that the due process clause of the Fourteenth Amendment required the appointment of an attorney for an indigent defendant in any state criminal prosecution. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

■ However, the state cannot force a defendant to accept counsel. There is a parallel right under the Sixth Amendment for a defendant to waive counsel and proceed *pro se.* The United States Supreme Court explains that the Sixth Amendment permits a defendant charged with a crime to "conduct his own defense ultimately to his own detriment." *Faretta v. California,*

422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Waiver of the right to counsel must be made "knowingly and intelligently." *Id.* at 835, 95 S.Ct. 2525.

■ Clay complains that the trial court never provided him with a written waiver of counsel. Section 600.051 mandates such a waiver:

1. Any judge of a court of competent jurisdiction may permit a waiver of counsel to be filed in any criminal case wherein a defendant may receive a jail sentence or confinement if the court first determines that defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel and the waiver is signed before and witnessed by the judge or clerk of the court, providing further that the waiver contains at least the following information which the defendant has read or which has been read to the defendant before the signing thereof:

(1) That the defendant has been charged with the offense of .... (nature of charge must be inserted before signing);

(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

(3) That the maximum possible sentence on the charge is .... imprisonment in jail and a fine in the amount of .... dollars or by both imprisonment and fine. That the minimum possible sentence is .... imprisonment in jail or by a fine in the amount of .... dollars or by both such confinement and fine;

---

3. Nor is the "escape rule" applicable here. That rule operates to deny the right to appeal where a defendant absconds after conviction in order to escape justice. *State v. Carter,* 98 Mo. 431, 11 S.W. 979 (1889); *State v. Branch,* 811 S.W.2d 11 (Mo.App.1991).

4. The Sixth Amendment to the United States Constitution provides:
 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public

trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;

(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;

(6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

The § 600.051 requirement is strictly enforced. *See Peterson v. State*, 572 S.W.2d 475 (Mo. banc 1978) (holding that the use of the written form is mandatory and that failure to use the written form as mandated is reversible error).

Subsequently, there have been several exceptions to the rule. For example in *May v. State*, 718 S.W.2d 495, 497 (Mo. banc 1986), the court held that *Peterson* should not be applied in cases where "the statutory waiver is presented to the defendant in open court and read into the record, and he maintains his purpose of conducting his own defense, while explicitly refusing to sign."

■ Another exception applies where a defendant has standby or hybrid counsel. *See State v. Hunter*, 840 S.W.2d 850, 857 (Mo. banc 1992). In the case at hand, Clay refused any assistance from Agrawal and refused the trial court's offer to have Agrawal assist Clay in his defense.

■ Another exception provides that § 600.051 does not apply where a waiver is implied by conduct. Clay claims that he did not voluntarily waive his right to counsel. He made it clear that he wanted counsel at trial, but that he did not want Attorney Agrawal. Clay maintains that the court cannot imply a waiver of counsel as he did not have the means to hire counsel. The "implied by conduct" cases have arisen where non-indigent defendants

refuse to retain counsel and also refuse to waive their right to counsel. Although Clay was indigent, we believe those cases govern the issues before us. Clay had a pattern of refusing to cooperate with assigned counsel and, at the same time, maintaining that he wanted to be represented by counsel – but not the counsel appointed to him. It is clear from Clay's actions, and from his contentions on appeal, that he would not have signed a statutory waiver even if it had been presented to him because he did not intend to waive counsel. Indeed, reference to other portions of the record (including his sentencing hearing) detail Clay's recalcitrance and failure to acknowledge that he has heard what the trial court has told him. It is evident that Clay was playing the system in the same way that a non-indigent defendant does when he refuses to hire counsel.

In *State v. Yardley*, 637 S.W.2d 293, 295–96 (Mo.App.1982), the defendant claimed that his conviction could not be upheld because he had not signed a written waiver of counsel as required by § 600.051. In rejecting this claim, the Southern District stated:

In this case the appellant did not expressly waive counsel. In fact, he said he wanted counsel but refused to employ a lawyer. If it is to be said that the appellant waived counsel, it is a waiver implied by his actions. A fair construction of § 600.051 is that it applies only to express waivers. To construe that section otherwise would create a vehicle by which a procedurally wise defendant could frustrate the administration of justice. *Com. v. Wentz*, 280 Pa.Super. 427, 421 A.2d 796 (1980). Of course, a non-indigent defendant who says he wants a lawyer but refuses to employ one should be admonished of the perils of self-representation. *State v. Edwards*, 592 S.W.2d 308 (Mo. banc 1979). He should also be given such advice as is necessary to establish he acts "knowingly and intelligently" within the meaning of *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). However, this

court holds that § 600.051 does not apply to the action of a defendant in refusing to hire a lawyer.

In *State v. Ehnes,* 930 S.W.2d 441 (Mo. App.1996), the court reiterated that § 600.051 does not apply to an implied waiver of counsel. The court decried the practice of defendants who "play a 'cat and mouse' game with the court ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." *Id.* at 447 (quoting *State v. Wilson,* 816 S.W.2d 301, 308 (Mo.App.1991)).

 Clay, as an indigent defendant, was entitled to appointed counsel. He had appointed counsel. He was not entitled to the appointed counsel of his choice. "A person accused of a felony has a constitutional right to have a fair and reasonable opportunity to secure counsel of his own choosing, but the accused in a criminal proceeding has no absolute right to be represented by counsel of his own choosing." *State v. Jefferies,* 504 S.W.2d 6, 7 (Mo.1974). An indigent defendant is entitled to the appointment of counsel. However, that right does not give the indigent defendant an entitlement to any particular attorney. *State v. Rollie,* 585 S.W.2d 78, 85 (Mo.App.1979).

 Nor did the trial court err in its failure to grant a continuance so that Clay could attempt to find new counsel. *See State v. Bell,* 719 S.W.2d 763, 767 (Mo. banc 1986). A defendant "is not entitled to the aid of a particular attorney as a matter of constitutional right, nor may he work a continuance by discharging his attorney without strong justification." *Id.* The court found no abuse of discretion in the trial court's denial of a continuance in that case. *Id.*

In the case at hand, there was a substantial basis for the trial court to conclude that "Mr. Clay has wanted to do anything that he can ... to see that this case is never tried, that includes getting rid of Jeff Martin and that includes the business with Mr. Agrawal, here in the last few days."

We hold that under the circumstances here, the exception noted in *Yardley* and *Ehnes* applies. Clay's pattern of behavior in "firing" his public defenders without justification and making it clear that he wanted to be represented by other counsel constituted an implied waiver in this case. Section 600.051 does not apply.

### Conclusion

Clay argues that he did not want to waive counsel. Clay wanted some counsel other than Mr. Martin, whom he first discharged, and other than Mr. Agrawal, whom he next chose to discharge. However, Clay had no evidence of any deficiency in the services of these attorneys. Clay impliedly waived his right to counsel. The trial judge was within his discretion to deny a continuance.

The judgment is affirmed.

ALBERT A. RIEDERER, Judge and JOSEPH M. ELLIS, Judge, concur.