**Affirmed and Opinion filed August 1, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00466-CV

---

### CLEAR CREEK INDEPENDENT SCHOOL DISTRICT, Appellant

### V.

### COTTON COMMERCIAL USA, INC. F/K/A COTTONWOOD DEBRIS COMPANY, LLC, Appellee

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 10-CV-4248**

---

## O P I N I O N

Today we decide whether a trial court possessed jurisdiction to confirm an arbitration award on a breach of contract claim against a school district notwithstanding the district's assertion of governmental immunity from suit. In the aftermath of Hurricane Ike, the school district contracted with a "national disaster recovery services" company to provide "restoration services" regarding the district's facilities. After the work was complete but before the company received full

payment, the district accused the contractor of (1) fabricating invoices to substantiate its charges, (2) failing to perform services for which it had submitted invoices, and (3) price gouging by charging an inflated rate for work performed under the contract. The district sued the contractor for fraud and for money had and received. Citing an arbitration provision in the contract, the company sought arbitration, which we compelled in a prior appeal. *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("*Cotton I*"). During the arbitration, the contractor asserted its own claim for breach of contract because the district allegedly failed to pay the full balance owed. The arbitrator (1) found the contractor knowingly made false representations and billed for work not performed, but awarded no damages to the district; and (2) found the district materially breached the contract and awarded the contractor damages for the amount due and owing.

When the contractor moved to confirm the award, the district asserted governmental immunity in a plea to the jurisdiction. The trial court denied the plea and confirmed the arbitration award.

The district appeals, asserting that the trial court erred in exercising its subject-matter jurisdiction to confirm the award. The trial court lacked jurisdiction, the district argues, because the parties' agreement did not fall within Texas Local Government Code section 271.152's waiver of immunity for breach of contract claims against local governmental entities.

We conclude that the agreement qualifies as a "contract subject to [chapter 271]"[1] and that the district's immunity from suit is waived to adjudicate a claim for the agreement's breach. Accordingly, we hold that the trial court had subject-matter

---

[1] Tex. Loc. Gov't Code §§ 271.151, 271.152.

2

jurisdiction to confirm the arbitration award, and we affirm the trial court's judgment.

## Background

In September 2008, Hurricane Ike damaged a number of campuses within the Clear Creek Independent School District ("CCISD").[2] To reopen its campuses, CCISD entered into a Restoration Service Agreement ("Restoration Agreement") with Cotton USA ("Cotton"), an independent general contractor. The Restoration Agreement called for Cotton to provide "restoration services," which, according to CCISD's amended petition, obligated Cotton "to remove debris from its premises and perform remediation and restoration services following clean up." The Restoration Agreement was presented to CCISD as a time and materials contract with an attached rate sheet. While the agreement stated that Cotton would provide a "scope of services" in a written estimate, it is undisputed that Cotton never provided CCISD with a scope of services or a written estimate.

The Restoration Agreement specifically authorized the use of subcontractors Cotton deemed necessary for completion of the work and provided for payment in accordance with a rate schedule. The Restoration Agreement also authorized the use of "a particular trade or service" on a "cost plus 10% overhead and 10% profit" basis if there was a "specific need" for a service that Cotton did not provide.

Cotton subcontracted with Cottonwood Debris Company, LLC ("Cottonwood"), a company owned by Cotton's principals, to provide debris-removal services. Cotton's Chief Executive Officer arranged the subcontract relationship and set the prices that CCISD would be charged. Different from

---

[2] For purposes of this opinion, the background facts are taken largely from the arbitrator's award, CCISD's live petition, and this court's prior opinion in this case.

CCISD's time and materials agreement with Cotton, Cottonwood's charges were to be made on a per crew basis. CCISD was not informed orally or in writing of the rates that Cottonwood would charge, or the fact that debris removal would not be performed on a time and materials basis.

The debris removal occurred from approximately September 18, 2008, through September 29, 2008. Remediation occurred through the end of October 2008. Cottonwood never actually had an employee on the CCISD job, nor did Cottonwood actually perform any work on the CCISD job. Instead, Cotton's CEO arranged for a number of subcontractors to remove debris from CCISD's facilities. Cottonwood then added its profit to the subcontractors' charges and invoiced Cotton. Cotton, in turn, added a twenty percent markup to Cottonwood's charges and invoiced CCISD.

A disagreement over payment for debris-removal services is the source of the present dispute. In reviewing Cotton's billing, including $1.4 million in charges related to Cottonwood's debris-removal work, CCISD discovered that Cottonwood had billed for certain services that the District knew with certainty Cottonwood had not performed. The total billed for those discrete services was $36,000. To substantiate Cottonwood's charges, CCISD requested documentation supporting the work Cottonwood claimed it performed. Further, at CCISD's request, CCISD and Cottonwood dealt directly with each other in an attempt to resolve the issues surrounding Cottonwood's charges.

Cottonwood had not maintained detailed backup documentation of the work it performed, and the Restoration Agreement did not require documentation of subcontractor charges. After the work was completed, CCISD asserted that payment of the invoices required backup documentation. Cottonwood did not disclose to CCISD that it did not have all backup information, but Cottonwood's Vice President

4

directed Cotton's Executive Director to provide CCISD with backup documents. Although CCISD knew that some of the documentation would have to be created, neither Cotton nor Cottonwood informed CCISD that all documents were estimates and some were false. Cotton advised Cottonwood that it did not have the type of documentation requested by CCISD. Because Cottonwood did not have the documentation, Cotton's Executive Director and one of his subcontractors created crew sheets to provide to CCISD. Cottonwood provided the crew sheets to CCISD in January 2009. Cottonwood did not disclose that the crew sheets were falsified.

CCISD subsequently paid Cottonwood approximately $700,000—half of Cottonwood's $1.4 million in debris-removal charges.

Separately from debris removal, CCISD also discovered that Cottonwood had fabricated documents relating to fuel charges. In February 2009, CCISD requested that Cottonwood provide substantiation for the fuel Cottonwood claimed to have used on the job. Cottonwood estimated and created purported third-party fuel tickets and submitted them to CCISD as genuine invoices from the fuel provider. CCISD, however, confirmed with the fuel provider that the invoices were not genuine.

Based on Cottonwood's fabricated documentation, CCISD decided to make no further payments to Cottonwood. Neither the false crew sheets nor the fabricated fuel tickets increased the amount Cotton originally billed to CCISD.[3]

CCISD, which was at the time attempting to seek reimbursement of its debris-removal costs from the Federal Emergency Management Agency ("FEMA"), notified FEMA of Cottonwood's allegedly fraudulent actions. FEMA initially denied CCISD's request for reimbursement. CCISD appealed FEMA's determination and was successful in obtaining a partial reimbursement of $296,315.

---

[3] Fuel costs are not at issue in this appeal.

5

That left CCISD with a gap of $258,816.99 in reimbursement that would potentially have to be borne by the district and, ultimately, its taxpayers and students. That gap in payment was in large part due to Cotton's falsification of invoices. CCISD subsequently obtained a grant from the Texas Education Agency that covered CCISD's out-of-pocket costs related to Hurricane Ike not otherwise reimbursed by FEMA. The grant was only available because FEMA had refused full reimbursement.

CCISD filed this suit against Cotton Commercial USA, Inc. ("Cotton Commercial"), the surviving company after Cotton and Cottonwood merged, asserting claims for fraud and money had and received. CCISD sought to recover money damages for lost FEMA reimbursements and for amounts paid to Cottonwood to which, CCISD alleged, Cottonwood was not entitled.[4] Cotton Commercial moved to compel arbitration and stated that it would assert a counterclaim against CCISD for breach of contract in the arbitration proceeding. The trial court granted Cotton Commercial's motion to compel as to Cotton Commercial's putative counterclaim against CCISD, but denied the motion as to CCISD's claims against Cotton Commercial. On interlocutory appeal, this court reversed the partial denial of arbitration, and the parties proceeded to arbitration as to their respective claims against each other. *Cotton I*, 387 S.W.3d at 108.

In the arbitration proceeding, Cotton Commercial asserted a breach of contract claim against CCISD for approximately $700,000, the amount it alleged was due

---

[4] On appeal, CCISD characterizes its suit as one to recover the lost FEMA reimbursements. It is not clear from CCISD's amended petition that it sought damages for lost FEMA reimbursements instead of or in addition to the payments CCISD made to Cottonwood for work Cottonwood did not perform. Regardless, Cotton Commercial does not dispute CCISD's characterization of its claims, so we accept it as true for purposes of this appeal. *See* Tex. R. App. P. 38.1(g).

6

and owing for Cottonwood's debris-removal work. Based on the evidence presented by the parties, the arbitrator found:

1. Cotton and CCISD entered into a valid and binding contract that allowed Cotton to hire Subcontractors and bill on a "cost plus" basis.

2. The contract did not limit the number of subcontractors nor require any time and materials information from them.

3. CCISD failed to pay the $705,122.60 due pursuant to the contract.

4. CCISD has a lawful credit in the amount of $36,000 for overcharges on work not done.

5. Cotton breached the contract by invoicing for work not performed, but its breach was not material.[5]

6. CCISD['s] failure to pay is a material breach of contract.

7. CCISD is not liable under the Prompt Pay Act, Tex. Gov't Code [§] 2251.021 because a bona fide, good faith dispute existed as to the charges.

8. Cotton by and through its agent for negotiations on payment of the invoices, Cottonwood, knowingly made false representations, which were initially relied upon by CCISD to its detriment.

9. CCISD was forced not to submit a large portion of Cotton/Cottonwood's charges to FEMA because they were fraudulent.

10. Although CCISD was ultimately compensated for [its] losses during Ike, [its] recovery was made more arduous and difficult by the fraudulent statements of Cotton. There is no evidence of the value of the difficulty or additional expense to recover reimbursement that were incurred.

11. The Texas Education Agency grant that ultimately covered the gap in FEMA payments is not a "collateral source" as asserted

_____

[5] The arbitrator found that Cotton breached the contract when it charged for work it did not perform. Though the arbitrator found this breach "immaterial," she notably offset $36,000 from damages CCISD owed to Cotton representing charges by Cottonwood for work not performed.

by CCISD. FEMA and the Texas Education Agency were both sources available to CCISD for reimbursement of storm costs.

12. CCISD is immune from the award of attorney's fees because pursuant to the provision of chapter 271 of the Texas Local Government Code applicable to the contract in issue, the contract must specifically allow the recovery of fees and specifically reference Section 271.159. The contract in issue did not. CCISD has not waived [its] immunity for attorney's fees.

Based on her findings, the arbitrator ordered that Cotton Commercial recover from CCISD the total sum of $669,122.60, plus pre- and post-judgment interest. The arbitrator declined to award damages to CCISD on its affirmative claims.

Cotton Commercial moved to confirm the award in the trial court. CCISD moved to vacate the award and filed a plea to the jurisdiction. As grounds for its motion to vacate and plea to the jurisdiction, CCISD asserted that it remained immune from suit because the legislature's waiver of immunity for breach of contract claims against a local governmental entity did not apply under the present facts. *See* Tex. Loc. Gov't Code § 271.152. As CCISD argued, section 271.152's waiver of immunity provision does not apply to Cotton Commercial's claim for debris-removal damages because the parties never executed a written contract for debris-removal services. More particularly, CCISD argued that the Restoration Agreement lacked an essential term because it contained no scope of work. Hence, the Restoration Agreement upon which Cotton Commercial's claim is based is not a "contract subject to this subchapter" under section 271.151(2).[6] The trial court denied CCISD's motion and plea, confirmed the award, and rendered a final judgment in Cotton Commercial's favor.

CCISD now appeals.

---

[6] CCISD also raised similar arguments in a plea to the jurisdiction filed in the arbitration proceeding.

**Analysis**

In a single issue, CCISD argues that the trial court erred by exercising subject-matter jurisdiction to confirm the arbitration award when the arbitrator exceeded her authority by issuing an award that was barred by CCISD's governmental immunity from suit. Inherent in CCISD's statement of its issue are two distinct, and inconsistent, propositions: one, that the trial court lacked subject-matter jurisdiction to render any judgment, either confirming or vacating the arbitrator's award, because CCISD is immune from suit as to Cotton Commercial's breach of contract claim; and, two, that the trial court should have rendered judgment vacating the award because, the district's immunity remaining intact, the arbitrator lacked authority to issue any award on Cotton Commercial's breach of contract claim. In response, Cotton Commercial contends that, among other things, the arbitrator has decided CCISD's immunity argument, which is conclusive and binding on this court.[7]

**A.     Clarification of the issue and standard of review**

We first clarify that the determinative issue is whether the trial court possessed subject-matter jurisdiction to confirm the award, as CCISD argued in its plea to the jurisdiction. CCISD's claim to immunity from suit implicates the trial court's subject-matter jurisdiction. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g). If CCISD's immunity has not been waived, the trial court would lack jurisdiction either to adjudicate Cotton Commercial's breach of contract claim or to enforce any arbitration award rendered against CCISD on that claim. *Cf. Town of Highland Park v. Iron Crow Constr., Inc.*, 168 S.W.3d 313, 317 (Tex. App.—Dallas

---

[7] *See Casa Del Mar Ass'n, Inc. v. Williams & Thomas, L.P.*, 476 S.W.3d 96, 101 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (generally, an arbitrator's findings are conclusive on issues of fact and law).

2005, no pet.); *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 446 S.W.3d 58, 68 (Tex. App.—Houston [1st Dist.] 2014) (if agency had exclusive jurisdiction over dispute, trial court would have lacked jurisdiction to render judgment on arbitration award), *aff'd*, 518 S.W.3d 422 (Tex. 2017).

Further, CCISD's alleged entitlement to governmental immunity from suit in the trial court is a question for the court, not an arbitrator. We reach this conclusion for several reasons.

First, the existence and boundaries of governmental immunity in the first instance are the judiciary's province. *See City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011); *Reata*, 197 S.W.3d at 375. It is the judiciary's primary responsibility to decide whether an arbitration respondent's immunity has been waived. *See Kan. City S. v. Port of Corpus Christi Auth.*, 305 S.W.3d 296, 303 (Tex. App.—Corpus Christi 2009, pet. denied).

Second, as mentioned, CCISD's immunity argument raises a jurisdictional question, and courts decide jurisdictional questions. Accepting Cotton Commercial's argument would allow private parties to, by contract, shift a uniquely judicial function to arbitrators. Such an arrangement offends our state's prohibition against permitting private litigants to create subject-matter jurisdiction by contract. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (explaining that subject-matter jurisdiction "cannot be conferred upon any court by consent or waiver") (internal quotation omitted); *Univ. of N. Tex. v. City of Denton*, 348 S.W.3d 44, 55 (Tex. App.—Fort Worth 2011, no pet.) ("We are therefore compelled to hold that the parties in this case could not avoid sovereign immunity by their contract, and therefore alter a court's subject matter jurisdiction, in that fashion."). Private parties cannot create jurisdiction where neither the constitution nor the legislature says jurisdiction resides. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74

10

S.W.3d 849, 858 (Tex. 2002) ("Only the Legislature can waive sovereign immunity from suit in a breach-of-contract claim.").

Third, Cotton Commercial has not directed us to any precedent indicating that a governmental entity's immunity from suit in court affects an arbitrator's authority under a contract signed by the entity to decide a dispute that the parties agreed to arbitrate.[8] In particular, Cotton Commercial identifies no authority stating that an arbitration proceeding is the proper forum to address whether the governmental immunity of an arbitration participant has been waived, nor does it cite cases in which an arbitrator has in fact decided that question.[9]

For these reasons, we are not bound by the arbitrator's legal conclusions in addressing CCISD's immunity argument raised in the arbitration proceeding. Separately, to the extent CCISD challenges the arbitrator's authority to consider the immunity question in the first place, the arbitrator's conclusions are inconsequential in the present circumstances because we are exercising our independent duty to determine the trial court's jurisdiction to confirm or vacate the arbitrator's award.[10]

---

[8] *Cf. City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009) ("An arbitrator derives his power from the parties' agreement to submit to arbitration . . . ."); *Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 646 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[T]he arbitrator's authority is derived from the arbitration agreement, not the court pleadings, and the arbitrator can grant relief that a trial court can not.").

[9] Cotton Commercial points to language in *Kansas City Southern* that "there is nothing preventing arbitrators from exercising . . . responsibility" to determine whether an arbitration respondent's immunity has been waived "if the matter is never brought to a court for consideration." *Kan. City S.*, 305 S.W.3d at 304 n.6. But the *Kansas City Southern* court did not cite authority for this proposition, and we do not agree this is a correct proposition of law.

[10] Contrary to CCISD's alternative argument, the question is not whether the arbitrator had "jurisdiction" to issue the award or "exceeded [its] powers" under Texas Civil Practice and Remedies Code section 171.088(a)(3)(A). If it were true that, as CCISD says, CCISD's immunity from suit divests the arbitrator of authority to rule on the breach of contract claim, then CCISD's immunity from suit would also divest the trial court of jurisdiction to sign any judgment vacating the resulting award under section 171.088(a)(3)(A).

11

To answer the question of CCISD's immunity from suit, we review the issue de novo. *City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011) (whether trial court possesses jurisdiction is question of law reviewed de novo); *IT-Davy*, 74 S.W.3d at 855. In determining whether a plaintiff has shown that immunity has been waived, we consider facts alleged by the plaintiff, and we also review any evidence submitted by the parties that is relevant to the jurisdictional issue. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Harris County v. Smyly*, 130 S.W.3d 330, 336 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)). Further, the arbitrator's findings resolving material and genuine fact disputes implicating both the merits and jurisdiction may be relevant. *Accord Miranda*, 133 S.W.3d at 226-28. In setting forth this applicable standard and scope of review, we reject Cotton Commercial's arguments that CCISD's failure to present a complete record of the arbitration hearing precludes review of the jurisdictional question, and we conclude that this court can presume evidence was adequate to support the arbitrator's factual findings.[11] *See Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 645 n.2 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Without a complete record of the arbitration proceedings, we presume adequate support for the arbitration award.").

B.    **Governmental immunity generally**

Sovereign immunity protects the state and its agencies from lawsuits for money damages. *IT-Davy*, 74 S.W.3d at 853. In contrast, governmental immunity,

---

[11] Though the arbitrator found that "Cotton and CCISD entered into a valid and binding contract," we are not bound by that legal conclusion for jurisdictional evaluation purposes. We review de novo whether the Restoration Agreement is a "written contract stating the essential terms of the agreement," sufficient to waive CCISD's immunity to suit. Tex. Loc. Gov't Code §§ 271.151(2)(A), 271.152.

12

which is a derivative of sovereign immunity, applies to political subdivisions of the state unless it has been waived. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694-95 & n.3 (Tex. 2003). There is no question that CCISD, as a political subdivision of the state, generally enjoys the protections afforded by governmental immunity.[12] Governmental immunity encompasses both immunity from suit, which bars a lawsuit against governmental entities absent legislative consent, and immunity from liability, which protects the governmental entity from judgments even if the legislature has consented to suit. *See City of Dallas*, 354 S.W.3d at 379; *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). As stated, immunity from suit deprives a trial court of subject-matter jurisdiction over a lawsuit against a governmental entity. *Miranda*, 133 S.W.3d at 224; *Jones*, 8 S.W.3d at 638.

Governmental immunity, like sovereign immunity, is a common law doctrine that initially developed without any legislative or constitutional enactment. *See Cohens v. Virginia*, 19 U.S. 264, 293 (1821) (recognizing the doctrine without citing statutory or constitutional authority); *Hosner v. De Young*, 1 Tex. 764, 769 (1846) (same); *see also Reata*, 197 S.W.3d at 374-75. Whether to waive governmental immunity is a matter left to the legislature, which may do so "only by clear and unambiguous language." *Tooke v. City of Mexia*, 197 S.W.3d 325, 328-29 & n.2 (Tex. 2006) (citing Tex. Gov't Code § 311.034) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

Both parties focus their briefing on the question whether the legislature has waived CCISD's immunity from suit under the circumstances of this case based on

---

[12] *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(B) ("political subdivision" includes any school district).

Local Government Code section 271.152.  Tex. Loc. Gov't Code § 271.152.  Thus, we begin by addressing the statutory waiver.

**C.     Waiver of immunity under Chapter 271**

1.     *The statutory text*

Texas Local Government Code section 271.152 waives governmental immunity from suit for certain breach of contract claims:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code § 271.152.

For section 271.152's waiver of immunity to apply, three elements must be established: (a) the party against whom the waiver is asserted must be a "local governmental entity," as defined by section 271.151(3); (b) the entity must be authorized by statute or the Constitution to enter into contracts; and (c) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2).  *Id.* §§ 271.151–.152.  If immunity from suit is waived, then a court has subject-matter jurisdiction to "adjudicat[e] a claim for breach of the contract."  *Id*. § 271.152.  "Adjudicating" the claim includes bringing the contract claim to final judgment through either court or arbitration proceedings.  *Id*. § 271.151(1).

There is no dispute that CCISD is a local governmental entity authorized to enter into a contract like the Restoration Agreement. *See id.* § 271.151(3)(B) ("[l]ocal governmental entity" means "a political subdivision of this state . . .

14

including a . . . public school district"). The parties dispute whether the agreement is a "contract subject to this subchapter," which is defined to mean:

> a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity[.]

*Id.* § 271.151(2)(A).

Accordingly, to qualify as a contract subject to section 271.152's waiver of immunity, a contract must:

(1) be in writing;

(2) (a) state the essential terms of the agreement (b) for providing goods or services (c) to the local governmental entity; and

(3) be properly executed on behalf of the local governmental entity.

*Id.*

CCISD challenges the "essential terms" element above. According to CCISD, the Restoration Agreement lacks an essential term because it does not include "a written description of the work to be performed" and is therefore "not an enforceable contract under section 271.152."

When the waiver of immunity applies, the governmental entity may potentially be liable only for limited, specifically defined damages. *Id.* § 271.153. These include the balance "due and owed by the local government entity under the contract." *Id.* The damages alleged by Cotton Commercial, and found by the arbitrator, fall within the scope of available damages under section 271.153.

2.    *Whether the contract states the essential terms of an agreement for providing services*

      a.    The service provided is an essential term

"Any written, authorized contract that states the essential terms of an agreement for providing services to the governmental entity triggers the waiver of immunity under chapter 271." *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 302 (Tex. 2014). There is no statutory definition for "essential terms," but the Supreme Court of Texas has characterized "essential terms" as, among other things, "the time of performance, the price to be paid, and the service to be rendered." *City of Houston*, 353 S.W.3d at 138-39 (internal quotation omitted); *see also Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010) (a written contract states the essential terms when it outlines the names of the parties, the property at issue, and the parties' "basic obligations"). Courts consider each contract separately on a case-by-case basis to determine its essential terms. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *see also Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

We first look to the agreement's language to identify its essential terms. *See Lubbock Cty. Water Control*, 442 S.W.3d at 304 (under chapter 271, the written agreement's terms are themselves the substance that determines whether immunity is waived). The Restoration Agreement states the names of the parties, the time of performance, and the price to be paid. *City of Houston*, 353 S.W.3d at 138-39. No party disputes that these essential terms are present. The "service to be rendered" is also an essential term. *See id.* Because the statutory waiver cannot apply unless the purported agreement is one "for goods or services," it is essential that the performance to be provided is stated in the agreement.

16

b. The service provided is sufficiently definite to be enforceable

Having identified the service provided as an essential term, we next examine whether the services described in the agreement are sufficiently definite to make the Restoration Agreement an enforceable contract. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). To be enforceable, a contract must address its essential terms with "a reasonable degree of certainty and definiteness." *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955); *see also Lubbock Cty. Water Control*, 442 S.W.3d at 309 (Willett, J., dissenting) (contract contains its "essential terms" when it "outlines the material terms necessary to make a contract enforceable") (citing *Kirby Lake*, 320 S.W.3d at 838). In other words, a contract's essential terms must at least be sufficiently definite to confirm that both parties intended to be contractually bound. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). Even when that intent is clear, the agreement's terms must also be sufficiently definite to "enable a court to understand the parties' obligations," *id.*, and to give "an appropriate remedy" if they are breached. *Fischer*, 479 S.W.3d at 237 (internal quotation omitted).

The Texas Supreme Court's recent decision in *Fischer* provides guidance on answering the question whether the services described are sufficiently definite.[13] In *Fischer*, the court analyzed whether a written agreement constituted a legally enforceable contract, when a clause in the agreement required the parties to mutually agree on a certain percentage of completed projects that affected the calculation of an earn-out payment. *Id.* at 238. In doing so, the court relied upon guiding principles of contract interpretation we find helpful and applicable here:

---

[13] At oral argument, counsel for CCISD agreed that the test for specificity, and thus enforceability, of a contract is the same under the common law or Chapter 271.

- Courts do not rewrite the parties' contract nor add to its language. *Id*. at 239. We construe the contract as a whole and "'evaluate the overall agreement to determine what purposes the parties had in mind at the time they signed'" it. *Id*. (quoting *Kirby Lake*, 320 S.W.3d at 841).

- Part performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed. *Id*. at 240. When "the actions of the parties . . . show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon[,] . . . courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." *Id*. (internal quotation omitted).

- Because the law disfavors forfeitures, we will find terms to be sufficiently definite whenever the language is reasonably susceptible to that interpretation. *Id*. "Forfeitures are not favored in Texas, and contracts are construed to avoid them." *Aquaplex, Inc. v. Rancho La Valencia, Inc*., 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).

- When construing an agreement to avoid forfeiture, we may imply terms that can reasonably be implied. *Fischer*, 479 S.W.3d at 239. "'Expressions that at first appear incomplete or uncertain are often readily made clear and plain by the aid of common usage and reasonable implications of fact.'" *Id*. (quoting *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966)).

Turning first to the contract language, several sections of the Restoration Agreement speak to the service to be provided. Section 1.1 describes the agreement as one for "restoration services." Specifically, section 1.1 provides, in pertinent part:

Section 1.1 <u>Nature of Agreement</u>. This Agreement is a contract for restoration services between Cotton and [CCISD], with the scope of services ("Work") to be provided as described in the written estimate ("Estimate") that will be provided by Cotton to [CCISD] and [CCISD]'s Insurance Company.

The Restoration Agreement does not, however, define the term "restoration services" and the record does not reveal that the contemplated scope of work was

18

provided by Cotton or demanded by CCISD. In section 2.3, CCISD authorized Cotton to remove certain contents of the buildings for the purpose of safekeeping, cleaning, inventory, and other purposes "reasonably related to completing" the work. Also, section 2.7 discusses disposal of hazardous material.

The agreement describes, albeit in general terms, the parties' basic obligations: restoration services, and related removal and disposal services, in exchange for valuable consideration. *See City of Houston*, 353 S.W.3d at 138-39; *Kirby Lake*, 320 S.W.3d at 838-39. The parties agreed that Cotton would provide restoration services following Hurricane Ike. CCISD and Cotton signed the agreement shortly after the hurricane with the purpose of reopening the school campuses as soon as possible. In addition to describing certain services, the Restoration Agreement gave Cotton the "exclusive authority" to subcontract and to utilize other contractors as Cotton "deem[ed] necessary" to complete the restoration of CCISD's facilities. Cotton also had "sole discretion" to "furnish all labor, supervision, materials, equipment, tools, supplies, subcontract work and services" that Cotton deemed "reasonably necessary to timely and fully perform and complete" its services. These provisions make clear that CCISD afforded Cotton substantial authority and discretion to engage subcontractors. CCISD agreed to pay for restoration services and also agreed to pay for Cotton's expenses in hiring subcontractors, without imposing limitations or requirements regarding documentation or notice on Cotton before it engaged those subcontractors or paid them. Thus, CCISD agreed to pay for restoration services Cotton agreed to provide, even if Cotton provided those services by hiring a subcontractor. To be sure, Cotton never provided a detailed scope of work, but the agreement afforded Cotton significant discretion to identify tasks necessary to restore and re-open all facilities and hire those subcontractors it deemed qualified to complete those tasks. The

19

agreement provides for "services" to CCISD commensurate with the purpose existing at the time of its signing, and we need not rewrite or add to the agreement's express language to reach this conclusion. *See Fischer*, 479 S.W.3d at 239. The agreement's descriptions of the services to be provided are sufficiently definite to enable a court to determine obligations and to provide a remedy for the agreement's breach. *See id*. at 239-40.

CCISD argues, however, that because the agreement does not mention "debris-removal" services specifically, the district's immunity from suit is not waived for a claim that it failed to pay for debris-removal services. We reject this argument for several reasons.

First, and again relying on the principles identified in *Fischer*, we consider the parties' performance under the Restoration Agreement. *See id*. at 241-42. The parties' performance here supports Cotton Commercial's argument that a meeting of the minds existed as to the parties' respective obligations. *See id.* at 239 (court may consider whether parties' performance removes any uncertainty or resolves any indefiniteness in the contract). The factual circumstances surrounding the agreement's formation—i.e., cleaning up and restoring CCISD's facilities, post-disaster, as quickly as possible to allow students to return—reveal no confusion or dispute as to the scope of Cotton's work. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014) (materiality of a contract term is determined on contract-by-contract basis, "in light of the circumstances of the contract"). CCISD does not specify any particular aspect or task that it claims was missing from the agreement, other than that the term "debris removal" is not expressly stated. The parties agreed that Cotton would perform "restoration services" for CCISD's benefit. The record shows that CCISD wanted debris-removal services performed. Cotton did, in fact, perform those services, by engaging

20

subcontractors to remove debris, for which CCISD compensated Cotton under the contract in part, at least until a dispute arose over the appropriate amount of compensation. It was only after the debris removal was completed that CCISD challenged any aspect of that service. And, when CCISD raised the issue, it did not claim that Cotton performed debris-removal services unauthorized by the agreement; rather, CCISD claimed Cotton charged too much for the debris-removal work. Moreover, CCISD sought and obtained significant reimbursement from taxpayers covering at least some portion of costs relating to debris removal. The parties' performance shows that they agreed to the same thing, in the same sense, at the same time. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2000, no pet.). When parties have "already rendered some substantial performance or have taken other material action in reliance upon their existing expressions of agreement," courts "will be more ready to find that the apparently incomplete agreement was in fact complete." *Fischer*, 479 S.W.3d at 242. The parties' actions here show "that they have intended to conclude a binding agreement;" hence we will "endeavor, if possible, to attach a sufficiently definite meaning to the bargain." *Id.* at 239 (internal quotation omitted).

Indeed, if CCISD is correct that the Restoration Agreement lacks an essential term, then the Restoration Agreement would be unenforceable altogether. *See Lubbock Cty. Water Control*, 442 S.W.3d at 307 & n.11; *Floating Bulk Terminal, L.L.C. v. Coal Logistics Corp.*, No. 14-01-00055-CV, 2002 WL 1733670, at *6 & n.6 (Tex. App.—Houston [14th Dist.] July 25, 2002, pet. denied) (not designated for publication) (collecting cases). This would result in the disfavored outcome of complete forfeiture. *See Fischer*, 479 S.W.3d at 239. While the scope of the term "restoration services" may "'at first appear incomplete or uncertain,'" we hold, on

this record, its definiteness is sufficiently clarified by "'reasonable implications of fact.'" *Id.* (quoting *Bendalin*, 406 S.W.2d at 900).

The parties cite various appellate court decisions in support of their respective positions. CCISD relies most heavily on *ICI Construction, Inc. v. Orangefield Independent School District,* 339 S.W.3d 235 (Tex. App—Beaumont 2011, no pet.). In *ICI Construction*, the Beaumont Court of Appeals held that a series of purchase orders, read together, did not constitute a written contract stating the essential terms. *See id.* at 239. Among the essential terms missing were the basis of the school district's agreement to pay and the properties the district agreed to have repaired, among others. *Id.* These omissions led the court to conclude that the putative contract documents were not sufficiently definite to enable a court to understand the parties' obligations. *Id.* at 240.

This court has distinguished *ICI Construction* and held that a series of purchase orders, read together, stated an agreement's essential terms, when the court could determine the scope of work to be performed "according to the details included in [the contractor's] job order proposals." *La Marque Indep. Sch. Dist. v. Healthy Res. Enter., Inc.*, 357 S.W.3d 761, 764-65 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In *La Marque*, the parties entered into an "Agreement for Professional Services," arising from hurricane damage for a project described as La Marque ISD's disaster recovery efforts. *Id.* at 762. The contractor did not contend that the scope of construction work performed was articulated in the four corners of the agreement; rather, the contractor pointed to language in the contract that the scope included "any additional duties outside of the Agreement." *Id.* at 765. The court agreed that the contract "contemplated that [the district] might seek an enlarged scope of services" through work orders. *Id.* The district did, in fact, seek an enlarged scope of work through subsequent purchase orders. *Id.* The court concluded,

therefore, that the evidence presented by the parties brought the agreement within the waiver of immunity contemplated by section 271.152. *Id.* at 766.

The present case is more like *La Marque* than *ICI Construction* based on, at a minimum, the contractual discretion granted to Cotton for engaging subcontractors to complete the work. *See id.* at 764-65 (noting fact that agreement contemplated "additional duties outside the contract" was sufficient to qualify under chapter 271). Further, *ICI Construction* is distinguishable because, there, the court found multiple "essential" terms missing from the putative contract documents. *ICI Constr.*, 339 S.W.3d at 239-40.

CCISD cites two other cases in support of its position. The first, *Delcom Group, LP v. Dallas Independent School District*, No. 05-11-01259-CV, 2012 WL 3552672 (Tex. App.—Dallas Aug. 17, 2012, no pet.) (mem. op.), held that a request for production, a responding bid, and a letter of acceptance, read together, did not constitute an enforceable written contract, when "essential material terms were lacking, including total price, number and type of classrooms to be completed, system design, schedule for implementation, scope of work, and warranty." *Id.* at *4. The record also indicated that the school district, in sending the letter of acceptance, intended only to "[n]egotiate and [e]nter [i]nto [a] [c]ontract." *Id.* The parties in *Delcom* "still had to determine the installation strategy and timeline, and they were still negotiating the warranty." *Id.*

Further, in *Learners Online, Inc. v. Dallas Independent School District*, 333 S.W.3d 636 (Tex. App.—Dallas 2009, no pet.), the court held that a grant application and a memorandum of understanding, read together, did not constitute a contract containing essential terms when the memorandum stated that the school district "[would] sub-contract . . . to implement the program described in this application," but no subcontract was executed. *Id.* at 644. The court concluded that the parties

agreed only that, upon acceptance of the application, they would craft the terms of a subcontract to implement the program. *Id.*

We find both *Delcom* and *Learners Online* distinguishable from the present facts. The parties in those cases agreed to contract in the future, which is generally not an enforceable contract. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846. In contrast, the Restoration Agreement signed by CCISD and Cotton was not an agreement to agree in the future.

Two additional record considerations inform our decision. First, we note that when CCISD filed suit against Cotton Commercial it specifically alleged that the Restoration Agreement *included* debris-removal services. We stated as much in *Cotton I*, based on, in part, CCISD's unchallenged allegations. *See Cotton I*, 387 S.W.3d at 101 ("According to the School District's amended petition, under the Restoration Agreement, [Cotton] was 'to remove debris from its premises and perform remediation and restoration services following clean up.'"). Only after the restoration work (including debris removal) was completed, after CCISD first sued Cotton Commercial, and after Cotton Commercial asserted its counterclaim for breach, did CCISD challenge the enforceability of the Restoration Agreement on the ground that the contract lacked a detailed scope of work and thus an essential term. While parties cannot plead facts to create jurisdiction where none exists, *see In re Crawford & Co.*, 458 S.W.3d 920, 928 n.7 (Tex. 2015) (orig. proceeding) (per curiam), we accept unchallenged jurisdictional allegations for purposes of deciding a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000).

Second, in response to CCISD's plea to the jurisdiction (both in the trial court and in the arbitration proceeding), Cotton Commercial presented evidence raising a genuine issue of material fact as to whether the scope of services included debris

24

removal. Whether Cotton Commercial could properly seek relief for Cottonwood's unpaid debris-removal work by asserting a claim for breach of the Restoration Agreement is a merits question. *See Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 657 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (fact issue existed regarding the parties' intent where subcontract was ambiguous relative to specifications of work). To the extent this disputed evidence on a merits issue also implicates jurisdiction, resolution by the factfinder may be appropriate and necessary. *See Miranda*, 133 S.W.3d at 226-28. Here, the factfinder is the arbitrator, who resolved that particular fact dispute in favor of the contract including debris removal. We do not disturb the arbitrator's factual findings on appeal. *See Hill Int'l, Inc. v. Riverside Gen. Hosp., Inc.*, No. 01-14-00038-CV, 2014 WL 2433131, at *3 (Tex. App.—Houston [1st Dist.] May 29, 2014, no pet.) (mem. op.) (in arbitration context, "it is not [the court's] province to determine the proper construction of the parties' agreement, nor the damages arising therefrom"). We thus reject CCISD's alternative argument that "[e]ven assuming . . . that the restoration agreement was a contract within the meaning of section 271.152, it cannot be stretched to include Cottonwood's scope of work because . . . debris removal is a wholly different industry and scope of work than restoration services." If the Restoration Agreement is "a contract within the meaning of section 271.152," then CCISD's immunity is waived to the extent of adjudicating a claim for breach of the agreement, and that is the end of the jurisdictional inquiry. *See City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 447 (Tex. App.—Dallas 2008, pet. denied) ("Once the trial court determines whether the contract falls within the provisions of section 271.152, it need not parse further the pleadings or the contract to determine whether the legislature has waived immunity for breach of contract claims."); *see also City of Houston*, 353 S.W.3d at 141 (declining to address merits of claims when deciding scope of section 271.152's waiver of immunity); *Bland*, 34 S.W.3d at 554.

25

In sum, despite the contract's lack of detailed specificity, we conclude that the Restoration Agreement nonetheless meets the "low threshold"[14] of an agreement for services that states all essential terms and is therefore enforceable. The agreement outlines the parties, the subject matter, and the basic obligations, including a "sufficiently definite" description of the services to be provided, such that a court could understand the parties' obligations. *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846. Accordingly, we hold that the Restoration Agreement is a contract subject to chapter 271 and CCISD's immunity from suit is waived for the purpose of adjudicating Cotton Commercial's counterclaim for breach of the agreement, in which Cotton Commercial sought all amounts it alleged were due and owing. Tex. Loc. Gov't Code §§ 271.151(2)(A), 271.152. Thus, the trial court possessed subject-matter jurisdiction to confirm the arbitrator's award.

## D. CCISD's remaining arguments

Beyond the issue of whether the Restoration Agreement meets the statutory definition of a "contract subject to this subchapter," CCISD makes two other arguments on appeal. We address each in turn.

### 1. *The "jurisdictional" element of breach*

CCISD argues that it is immune from Cotton Commercial's breach of contract claim because Cotton Commercial cannot establish the "jurisdictional element" of breach, citing *Garcia v. Mission Consolidated Independent School District*, 372 S.W.3d 629 (Tex. 2012). *Garcia* was an employment discrimination case, where the plaintiff's burden of establishing the prima facie elements of a statutory cause of action "implicate[d] both the merits of the claim *and* the court's jurisdiction because of the doctrine of sovereign immunity." *Id.* at 635-36. There is nothing in section

---

[14] *Lubbock Cty. Water Control*, 442 S.W.3d at 311 (Willett, J., dissenting).

271.152's language suggesting that the common law elements of breach of contract are themselves jurisdictional elements, nor does CCISD cite any authority so holding. *See W. Tex. Mun. Power Agency v. Republic Power Partners, L.P.*, 428 S.W.3d 299, 308 (Tex. App.—Amarillo 2014, no pet.) ("WTMPA contends immunity was not waived because it is not liable under the contract by reason of the assignment. This argument simply begs the question.").

We reject CCISD's argument.

2. *Award of pre- and post-judgment interest*

CCISD argues that, even if it waived its immunity to suit for breach of contract, it did not waive its immunity to an award of pre- and post-judgment interest. In other words, CCISD contends that the trial court lacked subject-matter jurisdiction to confirm the portion of the arbitrator's award regarding interest.

Section 271.153 of the Local Government Code provides that the total amount of money awarded in an adjudication brought against a local governmental entity for breach of contract is limited to the balance owed under the contract (plus any amount owed for additional work performed), attorneys' fees, and "interest as allowed by law." Tex. Loc. Gov't Code § 271.153(a). CCISD makes the following argument: because neither the contract nor a specific statute expressly permits an award of interest, the award of interest must sound in equity, and because a school district is immune to equitable claims, the award of interest is barred by immunity.[15] We are unpersuaded by CCISD's argument. Section 271.153 waives CCISD's immunity to an award of interest in breach of contract suits because such interest is allowed by

---

[15] CCISD cites *TXU Energy Retail Co. v. Fort Bend Independent School District*, 472 S.W.3d 462, 466-67 (Tex. App.—Dallas 2015, no pet.), for the general proposition that the legislature has not waived school districts' governmental immunity to equitable claims, but *TXU* holds only that there is no waiver-by-conduct exception in breach of contract cases against governmental entities. Regardless, CCISD's argument fails for the reasons explained above.

law.  *See, e.g.*, *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531-32 & n.12 (Tex. 1998) (prevailing party in breach of contract dispute has legal right to pre-judgment interest); *May v. Ticor Title Ins.*, 422 S.W.3d 93, 102 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The Fort Worth Court of Appeals has rejected the argument made by CCISD here, and held that section 271.153 authorizes pre-judgment interest in breach of contract suits against a governmental entity.  *See Dallas Area Rapid Transit v. Agent Sys., Inc.*, 02-12-00517-CV, 2014 WL 6686331, at *16 (Tex. App.—Fort Worth Nov. 26, 2014, pet. denied) (mem. op.) (rejecting the argument that "allowed by law" in section 271.153 means "permitted by the Agreement or a statute" only).  We agree.  *See Zachary Constr. Corp. v. Port of Houston Auth.*, 449 S.W.3d 98, 110 (Tex. 2014) ("Section 271.152 uses Section 271.153 to further define to what extent immunity has been waived."); *City of San Antonio v. Hays Street Bridge Restoration Grp.*, No. 04-14-00886-CV, 2017 WL 776112, at *5 (Tex. App.—San Antonio Mar. 1, 2017, pet. filed) (mem. op.) ("[S]ection 271.153 plainly defines the type of awards a party may recover, i.e., for which immunity is waived."); *County of Galveston v. Triple B Servs., LLP*, 498 S.W.3d 176, 188 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

\* \* \*

Having rejected each of CCISD's arguments made to support its sole issue that the trial court lacked subject-matter jurisdiction to confirm the entirety of the arbitrator's award, we overrule CCISD's issue on appeal.

28

## Conclusion

We conclude that the trial court possessed subject-matter jurisdiction to rule on Cotton Commercial's motion to confirm the award, and we affirm the trial court's judgment.


/s/    Kevin Jewell
            Justice


Panel consists of Justices Boyce, Busby, and Jewell.