**Reversed and remanded and Opinion filed July 2, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00467-CV

## HOUSTON COMMUNITY COLLEGE SYSTEM, Appellant

## V.

## HV BTW, LP, Appellee

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-56765**

## OPINION

This is a dispute involving an easement agreement. In three issues, Houston Community College (HCC) challenges the trial court's grant of summary judgment in favor of HV BTW, LP (the Partnership) on the grounds that HCC is entitled to immunity from suit and the Partnership did not conclusively establish the easement agreement was properly executed by HCC. We conclude that HCC did not meet its burden to show its entitlement to immunity from suit. We further conclude that the trial court erred in rendering summary judgment in favor of the Partnership.

Accordingly, we reverse and remand.

## *Background*

HCC owns a vacant lot on Lumpkin Road in Houston, Texas (the Property). The Partnership owns an adjacent commercial building on Old Katy Road. In 2013, the Partnership approached HCC about obtaining an easement on the Property from Lumpkin Road.

HCC agreed to grant the easement. HCC and the Partnership executed an "Easement Acquisition Agreement." An "Access Easement and Right of Way Agreement" was attached as an exhibit to the Easement Acquisition Agreement. We refer to these agreements collectively as the Easement Agreement or the Agreements. The Agreements were signed on behalf of HCC by its acting chancellor Renee Byas and approved as to form by HCC's general counsel. As set forth in the Easement Agreement, as consideration for the easement, The Partnership agreed to construct "at its sole cost and expense, certain parking facilities on the Property" in accordance with plans approved by HCC and the Partnership.[1] After the Agreements were signed, Byas left HCC. The Partnership alleges that it "spent over $500,000 in engineering and permitting costs and fees, demolition costs, grading, and constructing drainage, curbs, and landscaping on the HCC Property." According to the Partnership, the only things left to be done are paving the road and parking lot and striping the parking lot.

To do the paving work, the Partnership needed approval from CenterPoint Energy, which had a utility easement on the Property. To obtain the approval, CenterPoint required a signed "Consent to Encroach" from HCC. The Partnership submitted the consent form to HCC. HCC refused to sign it unless the Partnership

---

[1] It is not clear from the record what type of parking facilities were to be constructed, but in its live petition, the Partnership refers to the facilities as a parking lot.

2

agreed to a license agreement instead of an easement.

The Partnership filed a lawsuit against HCC alleging breach of contract and seeking a declaration that the Partnership has an easement on the Property. The Partnership sought actual damages, specific performance, and attorney's fees. HCC filed a plea to the jurisdiction. The Partnership filed a motion for final summary judgment. The trial court rendered final summary judgment and ordered HCC to file an executed Access Easement and Right of Way Agreement in the Harris County real property records. The trial court also declared that the Partnership has an easement on the Property and awarded the Partnership attorney's fees.

## *Discussion*

In three issues, HCC contends the trial court erred in implicitly denying its plea to the jurisdiction because, according to HCC, it is immune from suit as to the Partnership's claims. Alternatively, HCC argues the trial court erred in granting summary judgment in favor of the Partnership.

## I.     No Error in Denying Plea to the Jurisdiction

HCC argues it is entitled to immunity from suit as a political subdivision for which immunity has not been waived. The Partnership contends immunity has been waived under chapter 271 of the Local Government Code, which waives governmental immunity from suit for a governmental entity that enters into a contract for services. *See City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 563 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

HCC, as a public community college, is a political subdivision of the state and, thus, protected by governmental immunity. *See Thielemann v. Blinn Bd. of Trustees*, No. 01-14-00595-CV, 2015 WL 1247018, at *2 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no pet.) (mem. op.); *see also* Tex. Civ. Prac. & Rem.

Code § 101.001(3)(A)–(B). Governmental immunity includes both immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Lubbock Cty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014); *CDM Smith*, 470 S.W.3d at 563. A governmental entity that enters into a contract necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit. *Church & Akin*, 442 S.W.3d at 300; *CDM Smith*, 470 S.W.3d at 563. Unlike immunity from liability, immunity from suit deprives the courts of jurisdiction and thus completely bars the plaintiff's claim. *Church & Akin*, 442 S.W.3d at 300; *CDM Smith*, 470 S.W.3d at 563.

We review a plea challenging the trial court's jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *CDM Smith*, 470 S.W.3d at 564. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228. Under this standard, we credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See id*. The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id*. If the defendant discharges this burden, the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id*.

As discussed, under chapter 271 the legislature waived sovereign immunity as to local governmental entities that enter into contracts for goods or services for

4

the purpose of adjudicating claims for breach of contract. Tex. Loc. Gov't Code §§ 271.151(2)(A), 271.152. Section 271.151(2)(A), in relevant part, defines the types of contracts subject to the waiver of immunity: "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2)(A). HCC argues that chapter 271 does not apply because the subject contract (1) does not provide for goods or services to HCC, (2) does not include certain essential terms, and (3) was not properly executed under the statute.[2] HCC further contends that the Partnership is not entitled to the remedy of specific performance under chapter 271 or to a declaration regarding the validity of the easement.

### A. Contract for Services

HCC argues that the Easement Agreement is not a contract for services to HCC because "an easement is an interest in land" and HCC will not receive a direct benefit. The dispositive issue is whether the Partnership, in agreeing to construct parking facilities on the Property, agreed to provide a service to HCC.

Chapter 271 does not define "services," but the supreme court has interpreted the term in this context as "broad enough to encompass a wide array of activities." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010); *CDM Smith*, 470 S.W.3d at 566. It generally includes any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. *CDM Smith*, 470 S.W.3d at 566. The services provided need not be the primary purpose of the agreement. *Kirby Lake Dev.*, 320 S.W.3d at 839; *CDM Smith*, 470 S.W.3d at 566.

---

[2] It is undisputed that the Agreements are not contracts for goods.

5

HCC cites three cases in support of the argument that the Easement Agreement does not provide for services to HCC. *See Church & Akin*, 442 S.W.3d at 297; *Water Expl. Co. v. Bexar Metro. Water Dist.*, 345 S.W.3d 492 (Tex. App.—San Antonio 2011, no pet.); *City of Garden Ridge v. Ray*, No. 03-06-00197-CV, 2007 WL 486395 (Tex. App.—Austin Feb. 15, 2007, no pet.) (mem. op.). Each case is distinguishable from the facts of this case.

In the first case, Church & Akin leased a marina from the Lubbock County Water Control and Improvement District. *Church & Akin*, 442 S.W.3d at 303. The lease prohibited Church & Akin from using the premises for any other purpose than as a marina without consent. *Id*. Church & Akin argued that by operating the marina it was providing a service to the Water District. *Id*. at 302. The supreme court disagreed because under the lease, the Water District did not obligate Church & Akin to operate a marina—it only restricted Church & Akin from using the premises for a different purpose without consent. *Id*. at 303. The court concluded, "When a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity." *Id*.

In the *Water Exploration Company* case, the San Antonio Court of Appeals held that the assignment by Water Exploration Company (WECO) of leases of groundwater property rights, wells, pumps, and easements to Bexar Metropolitan Water District (BexarMet) was not a contract for services because the nature of the property was a lease of real property even though WECO was required (1) to cure any failure to meet water quality standards or allow BexarMet to terminate the lease for any such failure, and (2) to maintain a minimum amount of water production with an option to cure any such failure. 345 S.W.3d at 496–98. The court construed these provisions as options to cure, not as services. *Id*. at 501.

6

Because BexarMet had leased a real estate interest from WECO, BexarMet was responsible for operating, maintaining, repairing, and replacing existing facilities and constructing new ones and WECO's options to cure were contingent on the leased property being unusable, the court held that the leases did not trigger governmental immunity under chapter 271. *Id*.

The *Garden Ridge* case involved a drainage culvert maintained by the City of Garden Ridge pursuant to an easement agreement granted in favor of the city. 2007 WL 486395, at *1. Ray sued the city for flooding related to the city's construction and maintenance of the culvert. *Id*. No statutory waiver applied to Ray's breach of contract claim. *Id*. at *1 n.1.

The facts of this case are more akin to a case cited by the Partnership, *Clear Lake City Water Authority v. Friendswood Development Co.*, 256 S.W.3d 735 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd), *disapproved on other grounds by Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012). In that case, Friendswood Development agreed to arrange for the construction of water distribution lines, sanitary sewer lines, and drainage facilities to provide service to houses Friendswood Development proposed to build. *Id*. at 738–39. Clear Lake City Water Authority agreed to purchase or lease the completed facilities. *Id*. at 739. We concluded that Friendswood Development's agreement to construct the facilities and to build streets, roads, and bridges constituted a provision of services to the Water Authority because it was "authorized to provide, among other things, water supply, waste disposal, and drainage facilities to the land within its boundaries." *Id*. at 751.

Under the Easement Agreement, the Partnership was required to construct parking facilities on HCC's property "[a]s consideration for the Easement to be granted." No other consideration was required. Courts have frequently held that the

construction of facilities to benefit a governmental entity is a service for purposes of chapter 271. The supreme court held that developers provided services to a city's water authority when the developers agreed to construct, develop, and bear all risk of loss or damage to sewer facilities because the developers were required to lease the sewer facilities to the water authority. *Kirby Lake Development*, 320 S.W.3d at 839. As mentioned, we held that an agreement to construct facilities and to build streets, roads, and bridges constituted a provision of services to a water authority. *Friendswood Development Co.*, 256 S.W.3d at 751. Sister courts have reached similar conclusions. For example, a development agreement required a real estate developer to provide services to a city by constructing a road, designing and constructing a turn lane, and working with the Texas Department of Transportation concerning location, alignment, design and construction of the lane. *Town of Flower Mound v. Rembert Enters., Inc.*, 369 S.W.3d 465, 473 (Tex. App.—Fort Worth 2012, pet. denied).

HCC also argues "easement agreements do not . . . waive immunity under [s]ection 271.151." But none of the cases relied on by HCC involved the construction of facilities for the local governmental entity, and all of the cases involved easements *granted to—not by*—the local governmental entity. *See Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc.*, No. 13-07-545-CV, 2008 WL 384320, at *1, 4 (Tex. App.—Corpus Christi Feb. 14, 2008, no pet.) (mem. op.) (involving easement granted to local governmental agency and no provision of goods or services); *City of San Antonio v. Reed S. Lehman Grain, Ltd.*, No. 04-04-00930-CV, 2007 WL 752197, at *1 (Tex. App.—San Antonio Mar. 14, 2007, pet. denied) (mem. op.) (involving sewer line easement granted to city); *Garden Ridge*, 2007 WL 486395 at *1 (involving drainage culvert maintained by city pursuant to easement granted to city). In this case, HCC purportedly granted the easement to

8

the Partnership in exchange for the construction of parking facilities.

We conclude that the Partnership's construction of parking facilities as consideration for the grant of an easement is a service to HCC. Accordingly, the Easement Agreement is an agreement for services within the purview of chapter 271.

## B. Essential Terms Included

In its opening brief, HCC argues that the Easement Agreement lacks an essential term—a description of the property to be transferred—because it purportedly does not include a legal description of the easement. In its reply, HCC also argues that the Easement Agreement lacks essential terms as to time of performance, price, and the work to be done.

Chapter 271 does not define "essential terms." *City of Houston v. Williams*, 353 S.W.3d 128, 138 (Tex. 2011). But the supreme court has characterized essential terms for purposes of chapter 271 to include, among other things, the names of the parties, the price to be paid, the service to be rendered, the property at issue, and the time of performance. *Id*. at 138-39; *Kirby Lake Development*, 320 S.W.3d at 838. The essential terms must outline the basic obligations of the parties. *Kirby Lake Development*, 320 S.W.3d at 838; *CDM Smith*, 470 S.W.3d at 565. Courts consider each contract separately on a case-by-case basis to determine its essential terms. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Clear Creek Indep. Sch. Dist. v. Cotton Commercial USA, Inc.*, 529 S.W.3d 569, 580 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

We first look to the agreement's language to identify its essential terms. *Cotton Commercial USA*, 529 S.W.3d at 580. The Easement Agreement states the names of the parties. As to price, HCC agreed to grant an easement in exchange for

the construction of parking facilities. The construction of parking facilities, as discussed above, is the service to be rendered. Moreover, as to the description of the property, the Access Easement and Right of Way Agreement, which is attached as an exhibit to the Easement Acquisition Agreement, refers to the "Easement Area" as "a non-exclusive, perpetual easement and right-of-way over, upon, and across that certain strip of land in Harris County, Texas, more particularly described on <u>Exhibit 'A'</u> attached hereto." Exhibit A is a legal description of the Easement Area.[3]

We next examine whether the services described in the Easement Agreement are sufficiently definite to make the agreement an enforceable contract. *See id*. To be enforceable, a contract's essential terms must be sufficiently definite to confirm that both parties intended to be contractually bound. *Id*. In that connection, the terms must also be sufficiently definite to enable a court to understand the parties' obligations and give an appropriate remedy if they are breached. *Id*. We rely on guiding principles of contract interpretation to determine whether the services described in the contract are sufficiently definite. *Id*. at 581 (citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016)).

Several principles of contract interpretation guide our analysis: (1) partial performance may remove uncertainty and establish that a contract enforceable as a bargain has been formed, even when some terms are missing or left to be agreed upon; (2) because the law disfavors forfeitures, we conclude terms are sufficiently definite whenever the language is reasonably susceptible to that interpretation; and

---

[3] Even if we were to interpret the Agreements as separate agreements, we have held that a series of documents, when read together, can establish an agreement's essential terms and bring an agreement within the purview of chapter 271. *See La Marque Indep. Sch. Dist. v. Healthy Res. Enter., Inc.*, 357 S.W.3d 761, 764-65 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The Easement Agreement, including this legal description, was attached to the trial court's final judgment.

(3) when construing an agreement to avoid forfeiture, we may imply terms that reasonably can be implied. *See id*.

The Easement Agreement describes in general terms the parties' basic obligations: construction of parking facilities in exchange for the grant of an easement on the Property. When parties have "already rendered some substantial performance or have taken other material action in reliance upon their existing expressions of agreement," courts "will be more ready to find that the apparently incomplete agreement was in fact complete." *Fischer*, 479 S.W.3d at 242; *Cotton Commercial USA*, 529 S.W.3d at 583. As to the parties' performance, the Partnership undisputedly has completed grading and constructing drainage, curbs, and landscaping on the Property. According to the Partnership, the only thing left to do is pave the road and parking lot and stripe the parking lot. HCC did not intervene while this work was being performed. Thus, the parties' performance supports an inference that the parties had a meeting of the minds as to their respective obligations. *See Cotton Commercial USA*, 529 S.W.3d at 582. The parties' actions here raise a fact question regarding whether they intended to conclude a binding agreement. Thus, we will "endeavor, if possible, to attach a sufficiently definite meaning to the bargain." *Fischer*, 479 S.W.3d at 239; *Cotton Commercial USA*, 529 S.W.3d at 583.

If HCC were correct in its assertion that the Easement Agreement lacks essential terms, then the agreement would be unenforceable, which would result in the disfavored outcome of complete forfeiture. *See Cotton Commercial USA*, 529 S.W.3d at 583. Despite the Easement Agreement's lack of detailed specificity about how the services would be rendered and when, the parties' actions—the Partnership's substantial performance and HCC's acquiescence—raise a fact question regarding whether the Easement Agreement states every essential term

11

and is therefore enforceable. *See id*. at 584–85 (noting school district's failure to challenge enforceability of contract until after work was completed indicated that contract's essential terms were sufficiently definite). The Easement Agreement outlines the parties, the subject matter, and the basic obligations, including a sufficiently definite description of the services to be provided, so that a court could understand the parties' obligations. *See id.* at 585. Given the jurisdictional evidence presented by the parties, we conclude that whether the Easement Agreement states each essential term required under chapter 271 is an issue for the factfinder on remand.

### C. Properly Executed

HCC contends that the Easement Agreement was not properly executed under chapter 271 because it was required to be, but was not, approved by HCC's board of trustees. The Partnership argues that (1) the focus under chapter 271 is not on whether a contract complies with all the policies and procedures for the execution of a contract but instead is on whether the governmental agency had the authority to execute a contract; and (2) Byas, as chancellor, had the authority to sign the Agreements.

Under chapter 271, a local governmental entity must be "authorized by statute or the constitution to enter into a contract." Tex. Loc. Gov't Code § 271.152; *TXU Energy Retail Co. L.L.C. v. Fort Bend Indep. Sch. Dist.*, 472 S.W.3d 462, 465 (Tex. App.—Dallas 2015, no pet.). As we have noted, chapter 271 "does not require that the contract at issue be properly executed by the governmental entity; rather, the requirements of the statute are satisfied if the contract was properly executed *on behalf of* the entity." *City of Houston v. Clear Channel Outdoor, Inc.*, 233 S.W.3d 441, 446 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (emphasis in original). Moreover, whether a contract is binding is a

12

question that goes to the merits of the case, not a question of whether the contract was properly executed.[4] *Id*.; *see also El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 564 S.W.3d 228, 238 (Tex. App.—El Paso 2018, pet. filed). With these principles in mind, we turn to the facts of this case.

HCC concedes that it is authorized by statute to enter into contracts through its governing board. *See* Tex. Educ. Code § 130.084 (setting forth "powers and duties" of "[t]he governing board of a junior college district"). HCC board policy dictates that "[a]n individual member may act on behalf of the Board with the official authorization of the Board." Also, under board policy in effect at the time Byas signed the Agreements, she had authority delegated by the board to award certain contracts without board approval. "Purchases or sales of real property," however, required approval of the board.

HCC relies on an opinion from the Dallas Court of Appeals for the proposition that, "[a]bsent [b]oard approval, both as a matter of law and HCC [p]olicy, there is no contract." *See LTTS Charter Sch., Inc. v. C2 Const., Inc.*, 358 S.W.3d 725 (Tex. App.—Dallas 2011, pet. denied). In that case, a contractor had been retained to construct school facilities for LTTS Charter School. *Id*. at 730. No written contract was signed, and the school board did not vote to approve an agreement with the contractor. *Id*. at 742–44. The court held under those circumstances that a contract for services had not been properly executed under chapter 271. *Id*. at 744.

Here, unlike in *LTTS*, the Agreements were signed by HCC's representative.

---

[4] HCC argues that Byas "could not legally make a binding, enforceable contract" and "HV['s] attempt to bind HCC to the Easement Agreement circumvents the policies behind the Texas Open Meetings Act and Texas Education Code." *See* Tex. Gov't Code §§ 551.001–551.146 (Open Meetings Act). But these arguments as articulated are relevant to whether the Easement Agreement is binding, not whether it was properly executed. Thus, we do not reach these issues as part of our jurisdictional inquiry. *See Clear Channel Outdoor*, 233 S.W.3d at 446.

So, at issue is whether Byas, as HCC's representative, had the authority to sign the Agreements on behalf of HCC. *See Clear Channel Outdoor*, 233 S.W.3d at 446 (holding purchase agreement was properly executed after having been signed on behalf of the City of Houston); *Amex Props.*, 564 S.W.3d at 243 (holding fact question existed as to whether a lease was properly executed when some evidence showed the lease had been executed "on behalf of" charter school operator). HCC argues that Byas did not have the authority to sign the Agreements because (1) the board policy in place at the time did not authorize the chancellor execute the Easement Agreement and the Easement Agreement is not a contract for HCC to purchase anything; (2) HCC approved a policy after the fact allowing the chancellor to execute easement agreements; and (3) Byas did not have the authority to grant an easement because it is an interest in land.[5] We address each argument in turn.

**Board Policy in Effect When Easement Agreement Signed**. The Agreements were signed in 2013. The Partnership argues that board policy allowed the chancellor "to initiate and execute contracts valued at up to $100,000." However, that policy was issued in 2015. Prior to that, a policy had been issued in 2014 that increased the chancellor's ability to "award [a]ny contract or purchase order" up to $75,000. There is no evidence in the record of the contract dollar limit before that date, but the 2014 policy is some evidence that when she executed the Agreements, Byas had the ability to award contracts for some dollar amount less than $75,000 because the 2014 policy merely increased the dollar amount for a

---

[5] HCC argues that the Partnership had the burden to show the Easement Agreement was properly executed. To the contrary, HCC was required to assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction, i.e., that the Easement Agreement was not properly executed. *Miranda*, 133 S.W.3d at 228. The Partnership was required to present evidence sufficient to raise a material issue of fact regarding jurisdiction only if HCC discharged its burden. *See id.*

14

policy previously in place. There is no evidence in the record as to the value of the parking facilities or of the easement itself.[6]

As to HCC's argument that Byas lacked authority to execute the Easement Agreement because it is not a contract to purchase anything, first, the 2014 policy was not limited to purchases—it applied to "[a]ny contract or purchase order." Second, to say that the Easement Agreement is not a contract for HCC to purchase anything is inaccurate. As discussed, HCC was to receive parking facilities in exchange for the grant of the easement. Accordingly, HCC was purchasing parking facilities.

We conclude HCC has not shown on this record that the Easement Agreement required board approval because there is some evidence that the board policy in place at the time had delegated Byas the authority to execute the Easement Agreement.

**Amended Board Policy**. HCC asserts that the amended board policy instituted in 2017 allowing the chancellor to execute easement agreements is evidence that the chancellor did not have the authority to grant easements before 2017. The Partnership argues to the contrary that the amended policy "simply articulated the fact that the [c]hancellor had the authority to negotiate and sign easements, which all past [c]hancellors . . . had regularly done in the past" based on comments at the board meeting approving the amendment. At the meeting, the then current chancellor stated that "there is normally no payment on the easements and [granting easements] would not exceed [my] signature authority limit." He

---

[6] The Partnership argues that the chancellor could grant any easement because such a grant does not involve HCC's expenditure of funds. It is not clear on this record whether HCC's policy was limited to HCC's expenditure of funds or whether the policy applied to contracts *valued* at a certain dollar amount. The 2015 policy expressly refers to contracts "valued at up to $100,000."

further remarked that easements do "not convey real property [or] involve expenditure of funds outside [my] approval limits." He stated that he brought the issue to the board based on general counsel's recommendation, "as the easements for existing properties might not be included in the blanket execution of all documents." We conclude based on this evidence that there is also a fact question as to whether HCC chancellors had the authority to grant easements prior to the 2017 board policy amendment.

**Interest in Land**. Lastly, HCC argues Byas did not have the authority to transfer an interest in land to the Partnership. Although an easement is an interest in land, board policy only required board approval of, in relevant part, "sales of real property." An easement is defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Easement*, Black's Law Dictionary (7th ed. 1999). An easement "does not give the holder the right to possess, take from, improve, or sell the land." *Id*. Accordingly, the grant of an easement is not a sale of real property. *See Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) ("An easement does not divest a property owner of title, but allows another to use the property for [a specific] purpose."); *Saturn v. Barnett*, No. A-16-CA-505-LY, 2016 WL 7392240, at *1 n.2 (W.D. Tex. Dec. 20, 2016) (noting easement gives right to cross property but gives "no other property rights"), *report and recommendation adopted*, No. 1:16-CV-00505-LY, 2017 WL 9850919 (W.D. Tex. Jan. 12, 2017).

**Conclusion**. The record here undisputedly includes two written contracts signed by HCC's representative. *See Amex Props.*, 564 S.W.3d at 239. Viewed in the light most favorable to the Partnership, as we are required to do, the record shows that (1) when Byas was chancellor, she had authority delegated by the board to award contracts up to a certain dollar amount; (2) there is no evidence of the

dollar value of the Easement Agreement; (3) before the board amendment was passed expressly giving chancellors authority to grant easements, chancellors had granted easements because "there is normally no payment on the easements and [granting easements] would not exceed [the] signature authority limit"; and (4) granting an easement is not the sale of real property, which would trigger the requirement for board approval. Given the jurisdictional evidence presented by the parties, we conclude that the resolution of whether the Easement Agreement was properly executed on behalf of HCC is an issue for the factfinder on remand. *See id.* at 243.

## D. Specific Performance Available

HCC argues that the Partnership is not entitled to the remedy of specific performance under chapter 271.[7] *See* Tex. Loc. Gov't Code § 271.153 (Limitations on Adjudication Awards). The supreme court recently held that a prior version of the statute did not foreclose a lawsuit for specific performance against a local governmental entity when immunity was waived for breach of contract. *Hays St. Bridge Restoration Group v. City of San Antonio*, 570 S.W.3d 697, 708 (Tex. 2019). HCC argues the current version of the statute forecloses such a lawsuit.

The version of the statute at issue in *Hays* applied to only one type of contract: "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." Act of June 17, 2005, 79th Leg., R.S., ch. 604 § 1, 2005 Tex. Gen. Laws 1548, 1548 (amended 2013) (current version at Tex. Loc. Gov't Code § 271.151(2)(A)). Under that version of the

---

[7] HCC incorrectly asserts that specific performance is the sole remedy the Partnership seeks. The Partnership also seeks actual damages for its costs incurred in constructing the parking facilities.

statute, "[t]he total amount of money awarded in an adjudication brought against a local governmental entity for breach of contract subject to [chapter 271 was] limited to" only certain types of damages. *Id*. at 1548–49 (current version at Tex. Loc. Gov't Code § 271.153). The supreme court held that since the statute limited damages, not remedies, it did not foreclose the plaintiff's lawsuit for specific performance. *Hays*, 570 S.W.3d at 707–08. Therefore, chapter 271 waived immunity from suit for specific performance. *Id*.

In 2013, the legislature added another type of contract to chapter 271: "a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use." Tex. Loc. Gov't Code § 271.151(2)(B). The legislature also expressly stated that "[a]ctual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of [such] a contract." *Id*. § 271.153(c).

HCC argues that the 2013 amendment indicates the legislature intended to waive immunity for specific performance only as to cases involving certain contracts for the sale or delivery of reclaimed water. The supreme court in *Hays* expressly declined to reach this issue. 570 S.W.3d at 708 n.65. The Partnership argues to the contrary that because the legislature did not amend any provisions of chapter 271 relating to service contracts but instead added a new category of contracts subject to waiver of immunity, the legislature did not intend to limit the remedies available under chapter 271 relating to service contracts.

The court in *Hays* noted that former section 271.153(a) "limits '[t]he total amount of money awarded' to enumerated categories of damages," while former subsection (b) "clarifies that '[d]amages awarded' against a local governmental entity 'may not include' certain additional categories." *Id*. at 707–08. The court

18

concluded that to read former section 271.153 "as impliedly prohibiting every suit seeking an equitable remedy against a local governmental entity would too greatly restrict the general waiver of immunity in section 271.152." *Id*. at 708. After the 2013 amendment, none of the relevant language in chapter 271 changed.

We ascertain the legislature's intent "from what it enacted." *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438 (Tex. 2016). The 2013 amendment added a new category of contracts for which immunity is waived. Tex. Loc. Gov't Code § 271.151(2)(B). The monetary damages available for breach of this new category of contracts includes "actual damages," which is not the same as the types of damages that are available for breach of service contracts. *Id*. § 271.153(a) (limiting the "total amount of money awarded" for breach of service contracts to "the balance due and owed by the local governmental entity under the contract," "the amount owed for change orders or additional work the contractor is directed to perform," "reasonable and necessary attorney's fees," and "interest"), (c) (including "actual damages" for breach of relevant contracts for the sale or delivery of reclaimed water). These distinctions between available damages lead us to conclude that the legislature intended for the two types of contracts to be treated differently.

The legislature expressly excluded certain types of damages for breach of either type of contract. *Id*. § 271.153(b) ("Damages . . . may not include [certain] consequential damages[,] exemplary damages[,] or . . . damages for unabsorbed home office overhead."). The legislature did not similarly limit the types of equitable remedies available for breach of service contracts. If the legislature had intended to eliminate specific performance as an available remedy for service contracts, it could have done so. *See Wasson Interests*, 489 S.W.3d at 438 ("[T]his Court presumes the Legislature deliberately and purposefully selects words and

19

phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact."). Because the legislature did not expressly exclude specific performance as an available remedy for service contracts, we conclude that chapter 271 did not foreclose the Partnership's lawsuit for specific performance under the current version of the statute.

### E. Declaratory Judgment Proper

HCC further argues that the Partnership cannot bring a claim seeking a declaration to circumvent HCC's entitlement to immunity. Under the Uniform Declaratory Judgments Act (UDJA), "[a] person interested under a deed . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). The supreme court has acknowledged that a party can bring a claim under the UDJA to determine the rights of parties to a contract subject to chapter 271. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323, 328 (Tex. 2006) (holding immunity from suit was waived under chapter 271 as to lawsuit for declaratory judgment seeking determination of whether loss was covered under insurance policy). HCC argues, however, that in seeking a declaration as to the validity of the easement, the Partnership is improperly seeking to impose liability for breach of contract. We do not agree with this characterization: in asking the trial court to determine whether the Partnership has an easement, which HCC disputes, the Partnership is seeking an adjudication of its property rights.[8]

---

[8] The Partnership asked the trial court for the following declaration: "Plaintiff and its customers, lessees, sublessees, licensees, agents, successor[s] and assigns have a valid, non-exclusive easement over and across the HCC Property for vehicular and pedestrian [access] from Lumpkin Road to the HVBTW Property and for parking upon the HCC Property."

It is settled law that the UDJA may be used to determine the validity of an easement. *See, e.g., Shelton v. Kalbow*, 489 S.W.3d 32, 56–57 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding it was proper for trial court to render declaratory judgment that deed granted easement for public use of road); *Ray*, 2007 WL 486395, at *3 ("While we agree that the UDJA may be used to determine the validity of an easement, . . . [t]here is no dispute that the easement in this case is valid."); *Roberson v. City of Austin*, 157 S.W.3d 130, 136 (Tex. App.—Austin 2005, pet. denied) ("[W]e note that a large number of easement cases have been decided under the UDJA." (citing Tex. Civ. Prac. & Rem. Code §§ 37.002(b), 37.004)). HCC signed the Easement Agreement and now disputes its validity. Accordingly, the Partnership was entitled to seek a declaration regarding whether it has an easement on the Property. *See Shelton*, 489 S.W.3d at 56–57.

### F. Conclusion: No Error in Denying Plea to Jurisdiction

We conclude that the trial court did not err in implicitly denying HCC's plea to the jurisdiction because (1) the Easement Agreement is a services contract; (2) there are fact questions regarding whether the Easement Agreement includes the essential terms of the parties' agreement and whether it was properly executed on behalf of HCC; (3) specific performance is an available remedy for breach of a services contract under chapter 271; and (4) the Partnership is entitled to a declaratory judgment under the UDJA and chapter 271 as to the validity of the Easement Agreement. We overrule HCC's issues challenging the trial court's denial of its plea to the jurisdiction. We turn to HCC's challenge to the trial court's summary judgment.

### II. Error in Granting Summary Judgment

HCC argues that the trial court erred in granting final summary judgment in favor of the Partnership because (1) as a matter of law, the Easement Agreement is

not an agreement for the sale of goods or services to HCC, and (2) the Partnership did not establish that the chancellor and general counsel of HCC had authority to grant an easement on behalf of HCC.[9] We have already concluded that the Easement Agreement is an agreement for the sale of services to HCC, but we agree that the Partnership did not conclusively establish that Byas, as chancellor, had the authority to execute the Easement Agreement.

We review a trial court's grant of summary judgment de novo. *St. Anthony's Minor Emergency Ctr., L.L.C. v. Ross Nicholson 2000 Separate Prop. Tr.*, 567 S.W.3d 792, 796 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

A party filing a traditional motion for summary judgment has the initial burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a plaintiff moves for summary judgment on its cause of action, it must conclusively prove all essential elements of its claim as a matter of law. *Leonard v. Knight*, 551 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Wyrick v. Bus. Bank of Texas, N.A.*, No. 14-18-00062-CV, 2019 WL 1941839, at *4 (Tex. App.—Houston [14th Dist.] Apr.

---

[9] As mentioned, HCC's general counsel approved the Easement Agreement as to form. We have not found any evidence in the record indicating that general counsel had the authority to execute the Easement Agreement, and the Partnership did not present any such evidence in support of its motion for summary judgment.

30, 2019, no pet. h.). The nonmovant has no burden to respond to a motion for summary judgment unless the movant conclusively establishes each element of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999).

The Partnership moved for summary judgment on its breach of contract claim against HCC. Accordingly, the Partnership was required to present conclusive proof of each element of breach of contract, including the existence of a valid contract. *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). To establish the existence of a valid contract signed by an agent for a principal, a claimant is required to show the agent had actual or apparent authority to execute the contract. *See 2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

The Partnership argues that Byas, as chancellor, had actual authority to execute the Easement Agreement. The Partnership presented the following evidence in support of this argument: (1) HCC's procurement policy approved on August 25, 2014, which increased the chancellor's ability to "award [a]ny contract or purchase order" up to $75,000; (2) HCC's Purchasing and Acquisition policy issued February 16, 2015, in which the board of trustees granted the chancellor "authority to initiate and execute contracts valued at up to $100,000"; and (3) minutes from a board meeting dated January 19, 2017 during which the board delegated to the chancellor "authority to negotiate, approve, and execute real property easements and rights of way" and the chancellor stated that easements do not "convey real property [or] involve expenditure of funds outside [the chancellor's] approval limits."

As noted above, the Easement Agreement was signed on October 13, 2013.

The documents presented by the Partnership all reflect policies instituted after that date. The August 2014 procurement policy states that the chancellor's ability to award a contract was increased to $75,000, so it amounts to some evidence that prior to August 2014, Byas had the ability to award a contract for an amount less than $75,000. However, this policy is not conclusive evidence that Byas had the authority to execute the Easement Agreement because there is no evidence of the value of the Easement Agreement or of the dollar limit on Byas's ability to award contracts when she executed the Easement Agreement.[10] The February 2015 Purchasing and Acquisition policy increased the $75,000 ceiling to $100,000 but similarly does not mention the ceiling prior to August 2014. The board minutes are also some evidence that chancellors had authority to grant easements prior to 2017 because the then current chancellor articulated at the board meeting, as noted in the minutes, that the granting of easements "does not convey real property and it does not involve expenditure of funds outside [my] approval limits." But he also stated that he brought the issue to the attention of the board on the recommendation of HCC's general counsel because "the easements for existing properties might not be included in the blanket execution of all documents."

We conclude, based on this record, the Partnership did not conclusively prove as a matter of law that Byas had the authority to execute the Easement Agreement. Accordingly, the trial court erred in granting summary judgment in favor of the Partnership on its breach of contract claim.

### *Conclusion*

Having concluded that the trial court did not err in implicitly denying HCC's

---

[10] As mentioned, this record does not establish whether HCC's policy was limited to HCC's expenditure of funds or whether the policy applied to contracts *valued* at a certain dollar amount.

plea to the jurisdiction but the Partnership did not conclusively establish its entitlement to summary judgment on its breach of contract claim, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.


/s/    Frances Bourliot
Justice


Panel consists of Justices Christopher, Bourliot, and Zimmerer.